# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| LARRY T. OUTLAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:08-CV-356-TS |
| | ) | |
| WILLIAM WILSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Larry T. Outlaw, a *pro se* prisoner, submitted a Complaint under 42 U.S.C. § 1983. Pursuant to federal law, the Court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(a), (b). Courts apply the same standard under § 1915A as when addressing a motion under Rule 12(b)(6), which states that a complaint, or any portion of a complaint, may be dismissed for failure to state a claim upon which relief can be granted. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

> A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

*Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quotation marks and citations omitted). However, "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

# ANALYSIS

Outlaw alleges that he was denied medical treatment from August 11, 2006, through August 18, 2006. He names 25 defendants in his Complaint: 7 medical professionals and 18 non-medical staff. In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

## A.     Non-Medical Staff

The Seventh Circuit has explained that:

> If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

Here, the Plaintiff alleges that on August 11, 2006, he was seen by non-medical staff on eight occasions when he was sick, vomiting, and/or refusing food because of his illness. He alleges that they called medical staff about his condition five times: 7:30 a.m., 11:30 a.m., 1:20 p.m., 6:20 p.m., and 7:10 p.m. (DE 1 at 8–10.) He states that he was seen by nurses on two occasions that day: shortly after 7:30 a.m. and at 4:50 p.m. (DE 1 at 8–9.)

The Plaintiff alleges that on three occasions on August 11, 2006, non-medical staff did not call medical staff. At 4:30 p.m., he was told that a nurse would soon be making rounds, and a

nurse came 20 minutes later. (DE 1 at 9.) At 10:20 p.m., he was told that the nurse was aware of his concerns and was awaiting approval. (DE 1 at 10.) At 11:40 p.m., he was told that medical staff knew about his condition. (DE 1 at 11.) As noted, earlier in the day, medical staff had already received five reports and made two visits to see him. Also, in his description of his conversation with a nurse the next morning, the Plaintiff states that he "explained to the Nurse that while vomiting, a red color substance was clearly seen and the Evening Nurse was notified last night." (DE 1 at 11.)

"[S]ociety does not expect that prisoners will have unqualified access to health care . . . ." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Even though non-medical staff did not notify medical staff every time they saw the Plaintiff, they knew that medical professionals were aware of the Plaintiff's condition. In *Greeno*, the Seventh Circuit indicated that a key factor is whether the plaintiff's complaints were ignored. "Perhaps it would be a different matter if Miller had ignored Greeno's complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address Greeno's concerns." *Greeno*, 414 F.3d at 656. So too here. The non-medical staff did not entirely ignore the Plaintiff's complaints; the complaints had been recently and repeatedly reported to medical staff. Because medical staff were aware of the Plaintiff's medical condition, the non-medical defendants were not deliberately indifferent even though they only reported five of the eight times they observed the Plaintiff on August 11, 2006.

The Plaintiff alleges that on August 12, 2006, he was seen by non-medical staff on four occasions when he was sick, vomiting, and/or refusing food because of his illness. He alleges that on three occasions they called medical staff about his condition: 7:20 a.m., 11:40 a.m., and

3

7:20 p.m. (DE 1 at 11–13.) He states that he was seen by nurses on two occasions that day: 7:40 a.m. and 4:15 p.m. (DE 1 at 11–12.) He alleges that on one occasion on August 12, 2006, a non-medical staff member did not call medical staff. At 4:50 p.m., he was told "that the on duty nurse said the Medical Dept. is aware of Plaintiff's medical condition." (DE 1 at 13.) He also alleges that each of the non-medical officers who saw him overnight stated that medical staff had been notified and that the doctor was aware of his condition. Here again, the non-medical staff were not deliberately indifferent to his medical needs because they were addressing the issue and ensuring that medical staff were aware of the situation.

The Plaintiff does not provide the same detail about the events on August 13, 2006, but it is clear that he was seen by two nurses on two different occasions. While it is unclear exactly which non-medical defendants made reports to medical staff, it is clear that several of them did and that medical staff were aware of his condition. (DE 1 at 14.)

At the end of the day on August 14, 2006, he was transferred to the prison infirmary. Before that, he was seen twice by non-medical staff at 7:35 a.m. and 8:05 a.m. (DE 1-1 at 1–2.) Medical staff were contacted and Plaintiff was seen by a nurse at 10:45 a.m., 2:15 p.m., and 2:30 p.m. (DE 1-1 at 2–3.) The Plaintiff then recounts several contacts with non-medical staff while his transfer was being processed. (DE 1-1 at 3–5.) From then until August 16, 2006, he was under the direct care of medical professionals either in the prison infirmary or an outside hospital.

During each of the days that the Plaintiff complains that he was being denied medical treatment, he was seen by medical staff two or more times each day. He was first seen by a nurse shortly after 7:30 a.m. on the first day. Because the Plaintiff was under the care of medical

4

experts, the non-medical staff were justified in believing that he was in capable hands. Therefore, they were not deliberately indifferent to his medical needs. As a result, the non-medical Defendants will be dismissed.

**B.     Medical Staff**

The Plaintiff alleges that the seven medical Defendants (Dr. Crawford, Nurse N. Keefer, Nurse M. Adkins, Nurse B. Brubaker, Nurse A. Travis, Nurse C. Wingo, and Dr. Elrod) denied him medical treatment. "Before a doctor will be found deliberately indifferent, the plaintiff must show subjective indifference. The nub of this subjective inquiry is what risk the medical staff knew of and whether the course of treatment was so far afield as to allow a jury to infer deliberate indifference." *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008) (citation omitted). Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (citation omitted). It "is the functional equivalent of wanting harm to come to the prisoner." *Swofford v. Mandrell*, 969 F.2d 547, 551 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991)).

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.,* the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks and brackets omitted). "Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it

5

nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citation omitted). "[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Lambert v. Buss*, 498 F.3d 446, 452 (7th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994)). Even medical malpractice and incompetence do not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

Here, the Plaintiff alleges that Nurse N. Keefer saw him twice. She was the first nurse who visited him after he began vomiting. At about 7:30 a.m. on August 11, 2006, she took his vital signs and recorded his condition in his medical record. (DE 1 at 8.) When she returned at about 4:50 p.m. to give him his medication, the Plaintiff told her that he was in pain as a result of vomiting all day and having not eaten. She stated that she had notified Dr. Crawford and Nurse B. Brubaker and charted his information. (DE 1 at 9.) Although the Plaintiff argues that he should have been immediately taken to either the infirmary or the hospital when he began vomiting, it was not deliberately indifferent for Nurse N. Keefer to record and report his condition. Therefore, Nurse N. Keefer will be dismissed.

The Plaintiff alleges that Nurse A. Travis saw him twice. At about 4:15 p.m. on August 12, 2006, he told her that he was ill and needed to be hospitalized. She responded that Dr. Crawford and Nurse B. Brubaker knew about his medical condition. He states that she refused to take his vital signs. (DE 1 at 12.) Taken in isolation, refusing to monitor his vital signs could be evidence of deliberate indifference because the absence of such data could have caused a lack of information needed by the doctor to make a decision. But here, the Plaintiff explains that even with monitoring by other nurses, it would be two more days before he was transferred to the infirmary. Therefore, this lone refusal to take his vital signs was not the cause of any delay and

6

cannot be the basis for his denial of medical treatment. Two days later, at about 10:45 a.m. on August 14, 2006, Nurse A. Travis picked up a health care request form from Outlaw. (DE 1-2 at 2.) Doing so was clearly not deliberately indifferent. Therefore, Nurse A. Travis will be dismissed.

The Plaintiff alleges that Nurse C. Wingo saw him only one time. On August 14, 2006, she told a guard that Outlaw could not see a doctor unless he filled out a health care request form. After the Plaintiff completed this form, she saw him at about 2:15 p.m. and immediately reported his condition to Nurse B. Brubaker. (DE 1-2 at 2.) Later that day, he was taken to the infirmary as a result of a series of events that were put into motion by that request form and the visit by Nurse C. Wingo. Nurse C. Wingo's brief involvement appears to be the beginning of a chain of events that eventually lead to the Plaintiff's recovery, so her actions cannot be viewed as deliberately indifferent. Therefore, she will be dismissed.

The Plaintiff alleges that Nurse M. Adkins is responsible for operating the medical department at the Westville Correctional Facility. (DE 1 at 5.) "The doctrine of respondeat superior can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). "Supervisory liability will be found, however, if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Id.* In this case, the Plaintiff's only allegation regarding Nurse M. Adkins is that she is a supervisor; there is no allegation or facts from which it can be reasonably inferred that she knew of the alleged conduct of her subordinates or approved of it. Therefore, Nurse M. Adkins will be dismissed.

The Plaintiff alleges that Dr. Elrod saw him three times after he returned from the hospital. Dr. Elrod first saw the Plaintiff on the morning of August 16, 2006. At that time, the Plaintiff was receiving intravenous fluids and was waiting to be X-rayed. (DE 1-2 at 11.) The next morning, on August 17, 2006, after the Plaintiff had eaten and retained two full meals, Dr. Elrod saw him a second time. Though his condition had improved, he was retained in the infirmary until his test results returned. (DE 1-2 at 13.) Finally, on the morning of August 18, 2006, the Plaintiff had returned to his regular eating and medication schedules. Nevertheless, he was retained in the infirmary over the weekend as a precautionary measure. (DE 1-2 at 14.) None of these allegations about Dr. Elrod indicate there was any denial of medical treatment or deliberate indifference. Therefore, he will be dismissed.

The Plaintiff alleges that Dr. Crawford and Nurse B. Brubaker either were informed that he was vomiting on August 11, 2006, (DE 1 at 10), or no later than the morning of August 12, 2006, (DE 1 at 12). He alleges that the medical staff "and doctor both are fully aware of Plaintiff's medical problems" on August 13 as well. (DE 1 at 14.) Based on these allegations, it is reasonable to infer that Dr. Crawford and Nurse B. Brubaker were periodically updated about the Plaintiffs over the several-day period, from late on August 11 or early on August 12 through August 14, 2006, when Nurse B. Brubaker saw him at 2:30 p.m. and had him transferred to the infirmary. Based on these allegations, it is possible that the Plaintiff may be able to prove that Dr. Crawford and Nurse B. Brubaker or both were deliberately indifferent to his serious medical needs from August 11, 2006, until 2:30 p.m. on August 14, 2006.

The claim must end at 2:30 p.m. on August 14 because it was not deliberately indifferent for Nurse B. Brubaker to examine him, take his vital signs, and transfer him to the infirmary.

8

Although the Plaintiff complains that it took many hours before he arrived at the infirmary and that he was denied the use of a wheelchair to get there, "[u]nder the Eighth Amendment, [a prisoner] is not entitled to demand specific care. [H]e is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Although it took the Plaintiff a number of days to recover, there is no factual allegation in this complaint that he was denied medical treatment after he was ordered transferred to the infirmary at 2:30 p.m. on August 14, 2006. Neither were Dr. Crawford or Nurse B. Brubaker deliberately indifferent when they saw the Plaintiff during their rounds with Dr. Elrod on August 16, 17, and 18. Though the Plaintiff may not have liked or fully agreed with the care he received after he arrived at the infirmary, "[a]t best, he alleges a disagreement with medical professionals about his needs. This does not state a cognizable Eighth Amendment Claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976)." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (parallel citation omitted). Therefore, to the extent that the Plaintiff has attempted to present a claim based on events arising after 2:30 p.m. on August 14, 2006, those claims will be dismissed.

## CONCLUSION

Last, the Plaintiff filed a Motion Directing a Reply [DE 5], in which he asked for an order directing the Defendants to answer his Complaint. Consistent with this screening Order, that Motion will be granted in part and denied in part.

For the foregoing reasons, the Court:

(1) **GRANTS** the Plaintiff, Larry T. Outlaw, leave to proceed against Defendants Dr. Crawford and Nurse B. Brubaker in their individual capacities for monetary damages for the

9

denial of medical treatment in violation of the Eighth Amendment from August 11, 2006, until 2:30 p.m. on August 16, 2006;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Defendants Superintendent William Wilson, Captain J. Shreves, Lt. Burkett, Lt. Reveter, Sgt. Berry, Ofc. Belair, Ofc. Clark, Ofc. Parker, Ofc. Flowers, Health Care Administrator C. Montgomery, Lt. Pickens, Lt. Lessig, Sgt. B. Warner, Ofc. T. Dunn, Ofc. Conn, Ofc. John Doe J-Bracket Squad, Ofc. John Doe (1) K-Bracket Squad, Ofc. John Doe (2) K-Bracket Squad, Nurse N. Keefer, Nurse M. Adkins, Nurse A. Travis, Nurse C. Wingo, and Dr. Elrod;

(4) **GRANTS IN PART AND DENIES IN PART** the Motion Directing a Reply (DE 5) consistent with this screening of the Complaint;

(5) **DIRECTS** the clerk to transmit the summons and USM-285's for Dr. Crawford and Nurse B. Brubaker to the United States Marshals Service along with copies of this Order and copies of the Complaint;

(6) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Dr. Crawford and Nurse B. Brubaker; and

(7) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Dr. Crawford and Nurse B. Brubaker respond, as provided for in the Federal Rules of Civil Procedure and Northern District of Indiana Local Rule 10.1, only to the claims for which the Plaintiff been granted leave to proceed in this screening order.

SO ORDERED on November 25, 2008.

                                              s/ Theresa L. Springmann
                                              THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT
                                              FORT WAYNE DIVISION