UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| LARRY T. OUTLAW, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 3:08-CV-356-TLS |
| OLIVER CRAWFORD, and BARBARA BRUBAKER, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Crawford and Brubaker's Motion for Summary Judgment [ECF No. 29] filed on September 28, 2009. The Defendants seek summary judgment on the Plaintiff's Eighth Amendment claim, asserted under 42 U.S.C. § 1983, for the denial of medical treatment from August 11, 2006, until 2:30 p.m. on August 14, 2006. Also before the Court is the Defendants' Motion to Strike Portions of the Plaintiff's Declaration in Opposition to the Defendants' Motion for Summary Judgment [ECF No. 38]. For the reasons stated below, the Court grants the Defendants' Motions.

**PROCEDURAL BACKGROUND**

The Plaintiff, a prisoner proceeding pro se in this matter, filed a Civil Rights Complaint under 42 U.S.C. § 1983 [ECF No. 1]. The Plaintiff alleges that he was denied medical treatment from August 11, 2006, through August 18, 2006.[1] He named 25 Defendants in his Complaint: 7 medical professionals; and 18 non-medical prison staff members. On November 25, 2008, the

---

[1] Note the discrepancy between August 18 and August 14 above is not in error. The Plaintiff's allegation in his Complaint is that the Defendants denied him medical treatment until August 18, 2006. The Court entered an Opinion and Order [ECF No. 6] limiting the Plaintiff's claim to the time period from August 11, 2006, to 2:30 p.m., on August, 14, 2006.

Court entered an Opinion and Order [ECF No. 6] granting the Plaintiff leave to proceed against Defendants Crawford and Brubaker only in their individual capacities for monetary damages on his claim for the alleged denial of medical treatment in violation of the Eighth Amendment from August 11, 2006, until August 14, 2006, at 2:30 p.m.[2] The Court dismissed all other claims and Defendants. On September 28, 2009, Defendants Crawford and Brubaker filed a Motion for Summary Judgment [ECF No. 29] with an accompanying Brief in Support [ECF No. 30]. The Defendants met their obligation under Local Rule 56.1(e) to give a Timms notice [ECF No. 32] to the Plaintiff. The Plaintiff filed his Brief in Opposition [ECF No. 33] on October 29. On November 11, the Defendants filed a Reply in Support of their Motion for Summary Judgment [ECF No. 39] and a Rule 56 Motion to Strike [ECF No. 38] portions of the Plaintiff's Brief in Opposition.[3] These Motions are now fully briefed and ripe for ruling.

---

[2] The Conclusion section of the November 25, 2008, Opinion and Order [ECF No. 6] misstates the time range as from August 11, 2006, until 2:30 p.m. on August 16, 2006. However, the analysis section of the Opinion makes clear that the intended time period was from August 11, 2006, until 2:30 p.m. on August 14, 2006. The Opinion states:

> Based on these allegations, it is reasonable to infer that Dr. Crawford and Nurse B. Brubaker were periodically updated about the Plaintiff over the several-day period, from late on August 11 or early on August 12 through August 14, 2006, when Nurse B. Brubaker saw him at 2:30 p.m. and had him transferred to the infirmary. Based on these allegations, it is possible that the Plaintiff may be able to prove that Dr. Crawford and Nurse B. Brubaker or both were deliberately indifferent to his serious medical needs from August 11, 2006, until 2:30 p.m. on August 14, 2006.
>
> The claim must end at 2:30 p.m. on August 14 . . . .

(Nov. 25, 2008, Op. 8.)

[3] The Plaintiff did not respond to the Defendants' Motion to Strike.

# SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608-09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in Rule 56—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). If appropriate, summary judgment should be entered against a party who fails to respond in accordance with the rule. *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. However, the court is not required to draw every conceivable inference from the record, only reasonable ones. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989).

**MOTION TO STRIKE ANALYSIS**

In their Motion to Strike, the Defendants argue that the Court should strike parts of the Plaintiff's Declaration submitted in opposition to their Motion for Summary Judgment because it contains inadmissable hearsay and statements made without personal knowledge. Affidavit testimony must concern matters within the affiant's personal knowledge. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003); *see also* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Personal knowledge is not a rigid requirement; it also "includes opinions and inferences grounded in observations or other first-hand experience." *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999) (citing *Visser v. Packer Eng'g Assoc., Inc.,* 924 F.2d 655, 659 (7th Cir. 1991)). A court can find that evidence is inadmissible and strike it from a plaintiff's declaration where the court "finds that the witness could not have actually perceived or observed that which he testifies to." *Id.* (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)).

The Plaintiff's Declaration contains multiple references to what he thought might be recorded in his medical chart and whom he thought may have been notified about his condition. (Pl.'s Decl. in Opp'n to Defs.' Mot. for Summ. J. ¶¶ 4–23, ECF No. 33-2.) Every statement in the Plaintiff's Declaration that purports to show the Defendants' alleged knowledge is attributed to an unnamed non-medical or medical staff member. The Court cannot consider these statements because no evidence shows that the Plaintiff has personal knowledge that Defendants Crawford and Brubaker knew of his medical condition. For instance, the Plaintiff claims a nurse

4

told him that Defendants Crawford and Brubaker were aware of the Plaintiff's medical condition on August 11:

> On Aug. 11th 2006 at around 7:30 a.m., Plaintiff started vomiting-up all Food&Water. The Officer-in-Charge (O.I.C.) notified the assigned Nurse on Duty who came to perform[] Plaintiff's Vital Stats . . . The Nurse stated that it would be recorded in the Plaintiff's Medical Chart . . . The O.I.C. wrote it in the D-Pod's Log Book that Plaintiff was vomiting & needed Medical attention and made it clear that the Shift-Supervisor's Office will be notified . . .

(Pl.'s Decl. in Opp'n to the Defs.' Mot. for Summ. J. ¶ 4, ECF No. 33-2 (ellipses in original).)

The Plaintiff also stated:

> On Aug. 11th 2006 at around 11:40 p.m., Plaintiff was still-up vomiting uncontrollabl[y] and s[aw] that the watery-type of substance had turned dark red in color and Plaintiff immediately pushed the emergency Call button to inform the D-Pod's O.I.C. that it looks like Plaintiff was vomiting blood . . . The O.I.C. responded 'Medical is already aware of your illness and there's nothing custody can do.'

(*Id.* ¶12 (ellipses in original).) Even if the nurse said this, it at most establishes that the Plaintiff had some reason to believe that the Defendants knew about his condition. It does not establish that the Defendants were actually aware of his condition. Similarly, the Plaintiff states that a staff member told him that the Defendants were aware of the Plaintiff's medical condition on August 12. (Pl.'s Decl. in Opp'n to Defs.' Mot. for Summ. J. ¶ 15, ECF No. 33-2 ("The RN Nurse state that the H.C.A., Dr. Crawford & B. Brubaker all has been notified and is already aware of Plaintiff's continuous vomiting and vomiting of blood.").) Again, this fact at most establishes what the medical staff told the Plaintiff about what the Defendants knew, but the Plaintiff lacks personal knowledge about what the Defendant's actually knew prior to August 14, 2006.

5

Absent an observation of what prison staff were actually writing on his medical chart or speaking with the Defendants about the Plaintiff's condition, the Plaintiff cannot establish that he has personal knowledge of what may have been recorded in his medical chart or whom the prison staff told about his condition. *Joy*, 192 F.3d at 767 ("The inferences reached from a witness's observations need not reach the level of absolute certainty to be admissible. Rather, the key question for the trial court is whether a reasonable trier of fact could believe that a witness had personal knowledge of the facts about which he testified.") (citations omitted). The Plaintiff has not presented evidence that he saw any prison staff writing anything or telling anyone about the Plaintiff's condition. Therefore, the Court will strike the statements in the Plaintiff's Declaration regarding what prison staff wrote in his medical chart and whom prison staff told about the Plaintiff's condition because these alleged facts are not within the Plaintiff's personal knowledge. *Payne*, 337 F.3d at 772 ("[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience.'") (quoting *Visser*, 924 F.2d at 659)). The remaining portions of the Plaintiff's Declaration are among the materials before the Court in reviewing the Defendant's Motion for Summary Judgment.

## STATEMENT OF MATERIAL FACTS

In light of the Court's Motion to Strike Analysis, the following uncontroverted facts are now before the Court.

In August 2006, the Plaintiff was on chronic care for being an insulin-dependent diabetic. On August 11:

- At 5:00 a.m., the Plaintiff was awake and made no verbal complaints.

- At 7:30 a.m., the Plaintiff began vomiting food and water.

- A nurse tested the Plaintiff's blood sugar twice, once at breakfast when it was 192, and again at dinner when it was 101.

- Prison staff observed the Plaintiff throughout the day at 7:30 a.m., 11:30 a.m., 1:20 p.m., 4:30 p.m., 4:50 p.m., 6:20 p.m., 7:10 p.m., 10:20 p.m., and 11:40 p.m.

- At 11:40 p.m., the Plaintiff told non-medical staff that he was vomiting blood.

On August 12:

- At 5:00 a.m., prison staff conducted rounds, and the Plaintiff was awake and made no complaints.

- A nurse tested the Plaintiff's blood sugar twice, once at breakfast when it was 196, and again at dinner when it was 251.

- At 4:15 p.m., during the nurse's dinner time insulin measurement, the Plaintiff requested hospitalization. The Plaintiff refused his evening insulin.

- Non-medical staff observed the Plaintiff numerous times: at 7:20 a.m., 7:40 a.m., 7:20 p.m., and at unidentified times in the late night hours of August 12 and the early morning hours of August 13.

On August 13:

- At 5:00 a.m., prison staff conducted rounds, and the Plaintiff was awake and made no complaints.

- The Plaintiff did not eat any meals during the day.

- Prison staff did not test the Plaintiff's blood sugar at breakfast, but at dinner the Plaintiff's blood sugar was 205. The Plaintiff refused his insulin that evening.[4]

- The Plaintiff vomited blood throughout the evening into the morning of August 14.

On August 14:

- At 5:00 a.m., prison staff conducted rounds, and the Plaintiff was awake and made no complaints. At breakfast, the Plaintiff's blood sugar was 236.

- At 6:44 a.m., while Nurse C. Wingo-Layman was in the Plaintiff's cell testing his blood sugar, the Plaintiff reported that he had not eaten since August 11. Nurse Wingo-Layman noted that according to the custody staff, the Plaintiff had accepted all of his food trays except for lunch and dinner on August 12 and breakfast on August 14. The Plaintiff reported that he had been throwing up blood. Nurse Wingo-Layman explained that no personnel had noted vomit or vomit with blood. The Plaintiff requested that a doctor or the nurse practitioner see him, and Nurse Wingo-Layman told the Plaintiff to submit a request for healthcare on Form #45913 so he could speak to a nurse practitioner at sick call that day. Nurse Wingo-Layman noted that the Plaintiff was in no distress while she performed his finger stick.

- At 10:30 a.m., prison staff took the Plaintiff's vital signs, and they were as follows: blood pressure 150/92, temperature 98.9, pulse 90, respiration 18, and oxygen saturation 96%.

---

[4] The Diabetic Flow Sheet (ECF No. 31-6 at 46) that the Department of Corrections used to the track the Plaintiff's medication and blood sugar indicated that the Plaintiff received insulin in the evening on August 13. The Plaintiff's Declaration (ECF No. 33-2 at 6) states that the Plaintiff refused his medication on the 13th. This dispute is immaterial because even accepting the Plaintiff's testimony as true, it does not establish that the Defendants had knowledge of his condition. *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

- At around 10:45 a.m., the Plaintiff submitted a request for healthcare on Form #45913 stating that he was a chronic diabetic who needed immediate medical attention due to vomiting blood. He claimed that every time he ate or drank anything he threw up and had not kept anything down since August 11 at dinner.
- At 3:25 p.m., Defendant Brubaker, who is a practitioner at Westville Correctional Facility, examined the Plaintiff in the medical examination room in his pod. Defendant Brubaker tested and recorded the following vital signs: blood pressure 126/84, temperature 99.4, and pulse 100. The Plaintiff reported that he had been vomiting since August 11. Defendant Brubaker noted that the Plaintiff had a mild fever and a sore throat, but no lymphoadenopathy. She also noted that his weight was down.
- At 3:50 p.m., Defendant Brubaker admitted the Plaintiff to the infirmary segregation room. She ordered IV fluids for 24 hours, a clear liquid diet for 24 hours, urinalysis, blood work, blood sugar checks for 90 days, an abdominal x-ray, and Phenergan shots for 30 days. She also did not administer any of the Plaintiff's regular medications for the next 24 hours. The Plaintiff complained of a sore throat and lightheadedness. Defendant Brubaker noted that the Plaintiff was well-nourished and in no acute distress.

The Plaintiff remained in the infirmary for observation and treatment until Defendant Brubaker sent the Plaintiff to the St. Anthony Memorial Health Center's Emergency Room on August 15. The Plaintiff returned to the prison on the same day. The Plaintiff was under Defendant Brubaker's care as of August 14, and Defendant Crawford did not treat the Plaintiff until August 21.

Neither Defendant Crawford nor Defendant Brubaker has any recollection of anyone

reporting to them that the Plaintiff was vomiting or had other medical issues from August 11 until August 14. The Plaintiff's medical records did not have any notation by the Officer-in-Charge or the unidentified nurse as to the Plaintiff's episodes of vomiting or medical issues as alleged prior to August 14. (Diabetic Flow Sheet and Flow Sheet, ECF No. 31-6, at 46, 48; Authenticated Medical Records, ECF No. 31-6.) The medical records also did not have any providers orders from a nurse practitioner or doctor prior to August 14. *Id.*

## MOTION FOR SUMMARY JUDGMENT ANALYSIS

The Defendants argue that until the Plaintiff submitted a request for medical attention on Form #45913, they did not know about the Plaintiff's medical condition and that once they received the form, they provided prompt medical attention to the Plaintiff. The Plaintiff argues that he had a serious medical condition relating to his diabetes and that the Defendants were deliberately indifferent to his condition.

A prisoner may pursue an action under 42 U.S.C. § 1983 against any person who violates the prisoner's Eight Amendment rights while acting under the color of state law. *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). One Eighth Amendment protection is a prisoner's right to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). In order to succeed on an Eighth Amendment cruel and unusual punishment claim for deliberate indifference to medical needs, a plaintiff must "show (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition." *Berry*, 604 F.3d at 440; *see also Estelle*, 429 U.S. at 106 ("In order to state a cognizable [Eight Amendment] claim, a prisoner must allege acts or omissions sufficiently

10

harmful to evidence deliberate indifference to serious medical needs.").

For the objective element for deliberate indifference a court considers whether a medical condition is serious. *Berry*, 604 F.3d at 440. A medical condition is serious if it "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). With the subjective element, a court considers what a defendant knows about a plaintiff's condition "and whether the course of treatment was so far afield as to allow a jury to infer deliberate indifference." *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008); *see also Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("[A]n official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") (citations omitted).

Given that the Plaintiff's condition eventually required a doctor's attention, it was serious enough to meet the objective element at the summary judgment stage. *Greeno*, 414 F.3d at 653 ("[A] lay person would recognize the need for a doctor's care to treat severe heartburn and frequent vomiting."); *cf. Gayton*, 593 F.3d at 621 (recognizing that vomiting alone may not be a serious medical condition, but vomiting with other circumstances such as having blood in one's vomit is an objectively serious medical condition). However, the Plaintiff has not shown a triable issue on the subjective element. The Plaintiff has not provided any admissible evidence to the Court that the Defendants actually knew about his condition until the late morning of August 14 when the Plaintiff submitted his written request for medical attention on Form #45913. As a matter of law, the Defendants cannot be liable for deliberate indifference if there is no evidence they knew about the Plaintiff's condition. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994)

11

(requiring evidence that prison officials had actual knowledge of a serious condition in order for a plaintiff to succeed on a deliberate indifference claim). There is no factual dispute as to the Defendant's knowledge prior to August 14, because the only facts before the Court involving the Defendant's knowledge are contained in the Defendants' Affidavits attesting that they did not have any knowledge of the Plaintiff's condition until August 14. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) ("To survive summary judgment, a non-moving party must 'show through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial.'") (citing *Walker v. Shansky*, 28 F.3d 666, 670–71 (7th Cir. 1994)). The Plaintiff cannot move forward with his claim without presenting a triable issue on both the objective and subjective elements of his deliberate indifference claim, which he has failed to do. *Id.* at 463.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' Motion to Strike Portions of the Plaintiff's Declaration in Opposition to the Defendants' Motion for Summary Judgment [ECF No. 38] and Motion for Summary Judgment [ECF No. 29]. The Court DIRECTS the Clerk to enter judgment against the Plaintiff and in favor of the Defendants.

SO ORDERED on September 30, 2010.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION